J-S31006-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| DERICK HENRY BELL | : | |
| | : | |
| Appellant | : | No. 1519 MDA 2019 |

Appeal from the Judgment of Sentence Entered August 7, 2019
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0000804-2017

BEFORE: BOWES, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 16, 2020**

Derick Henry Bell appeals from the aggregate judgment of sentence of

four to nine years of imprisonment imposed following his convictions for two

firearms violations. We affirm.

The trial court offered the following summary of the underlying facts:

> On October 17, 2016, at or around 11:00 P.M., the City of
> Harrisburg Police Department responded to the Jazzland bar, on
> the corner of Walnut and Linn Streets, for a report of shots fired
> with the possibility of someone shot. Officer Jacob Pierce
> (hereinafter "Officer Pierce") was one of the responding officers to
> the scene. Upon his arrival, other officers were already
> establishing a crime scene; therefore, Officer Pierce began
> conducting a vehicle canvas wherein he wrote down vehicle
> information for all of the vehicles located within the crime scene.
> One vehicle located within the crime scene, a white Chrysler
> Pacifica, was registered to [Appellant].
>
> The following day, October 18, 2016, Detective Ryan Neal
> (hereinafter "Detective Neal") was assigned to the case. He
> reviewed the reports completed by the responding officers, as well
> as the surveillance video obtained from the Jazzland. In one of
> the reports reviewed, Corporal Delon Henry noted that

[Appellant]'s name had been provided by the Jazzland's bouncer, Orlando Putnam, as a possible suspect. Mr. Putnam subsequently identified [Appellant] in a photo array as the person he saw in Jazzland on the night of the shooting, as well as in the courtroom. After reviewing the information initially provided, Detective Neal returned to the Jazzland to request additional surveillance video in order to track [Appellant]'s movements.

The surveillance video was played for the jury during the course of the trial. In the video, Detective Neal identifies [Appellant] parking his vehicle and entering the Jazzland through the front door at or around 10:43 P.M. The video shows an altercation between [Appellant] and an individual, subsequently identified as Bernard Johnson, at or around 11:05 P.M. [Appellant] is viewed on Camera 8 leaving the Jazzland at 11:05 P.M. through the front door, which opens onto the intersection of Walnut and Linn Streets. On Camera 6 (the exterior camera), [Appellant] is viewed exiting the front door with a firearm in his hand. He is also viewed on Camera 1 running away from the Jazzland with a firearm in his hand.

Trial Court Opinion, 12/5/19, at 3-4 (citations and footnote omitted).

Although initially charged with additional crimes, Appellant ultimately was convicted only of possession of a firearm prohibited and firearm not to be carried without a license. Following a presentence investigation, Appellant was sentenced as indicated above on August 7, 2019.

Appellant filed a timely notice of appeal after his timely post-sentence motion was denied. Both Appellant and the trial court thereafter complied with Pa.R.A.P. 1925. Appellant presents one question for our review: "Whether the trial court abused its discretion in denying Appellant's request to remove juror number three after juror number three violated his oath during *voir dire* and violated the court's multiple directives during trial?" Appellant's brief at 4 (unnecessary capitalization omitted).

We begin with a review of the applicable law. "[T]he refusal of a new trial on grounds of alleged misconduct of a juror is largely within the discretion of the trial judge. When the facts surrounding the possible misconduct are in dispute, the trial judge should examine the various witnesses on the question, and his findings of fact will be sustained unless there is an abuse of discretion." *Commonwealth v. Cosby*, 224 A.3d 372, 426 (Pa.Super. 2019) (internal quotation marks omitted), *appeal granted in part on other grounds*, 9 MAL 2020, 2020 WL 3425277 (Pa. June 23, 2020).

While "[t]he right to be judged by a fair and impartial jury of one's peers is, of course, firm and well-established," our Supreme Court has held "that not every act of juror misconduct warrants the declaration of a mistrial." *Commonwealth v. Flor*, 998 A.2d 606, 639 (Pa. 2010) (citations omitted). Rather, "[o]nly when there has been prejudice to the accused does an act of juror misconduct require the granting of a new trial."[1] *Id*.

Appellant contends that the record evidences two instances of the misconduct of Juror Number Three, either or both of which warrant relief. The trial court explained the circumstances as follows:

> This issue was brought to the Court's attention [in the midst of the trial] by sworn Juror Number 7 who informed the jury manager of a concern regarding Juror Number 3. Juror Number 7 advised that Juror Number 3 commented that "he thought this

---

[1] Appellant notes that he did not request the extreme remedy of a mistrial, but only sought to have the juror removed. *See* Appellant's brief at 15. Nonetheless, in pursuing the issue on appeal, the grant of a new trial would be the appropriate remedy.

- 3 -

would be an easy case for him because of - and then he related a previous experience that he had with being shot at." (N.T. at 174). No juror engaged Juror Number 3 and Juror Number 7 testified that the comment would not affect his ability to decide the case. (N.T. at 175-76). Juror Number 3 did not indicate that he had a decision on the case, did not try to sway other jurors, and did not comment on the facts of this case. (N.T. at 176-77).

When questioned, Juror Number 3 stated the following:

JUROR NO. 3: Oh, I was just telling a story that happened to me down in Hagerstown.

THE COURT: Okay.

JUROR NO. 3: I was shot at. That's what I was saying. Like, it should be easy for me to figure out because I'm good at identifying people.

. . . .

THE COURT: All right. And no one engaged you in that conversation, they just kind of listened and –

JUROR NO. 3: Yeah. That was it. We didn't talk about the case, I just told them the story - I don't know if you care to hear it.

THE COURT: Okay.

JUROR NO. 3: But all I said was I'm really fast at identifying people because I identified the kid that shot at me . . . in like a matter of seconds. That's really all that happened.

THE COURT: . . . Now, have you, yourself, already made up your mind on this or are you still waiting for all the evidence to come in?

JUROR NO. 3: I've got my own opinion but I'm still trying to convey all the evidence there is. I don't know if I have seen enough but I feel like I've got a pretty clear idea.

> Neither the Commonwealth nor the defense elected to ask additional questions. Defense counsel requested Juror Number 3 be removed for his failure to accurately answer the *voir dire* question [concerning whether the perspective juror had been the victim of a crime of violence].

Trial Court Opinion, 12/5/19, at 8-9 (citations omitted). Appellant also indicated his concern that the juror expressing his belief that his experience demonstrated an exceptional ability to identify people might cause the other jurors to defer to his view of the evidence in the case. *See* N.T. Trial, 6/11-12/19, at 183. However, the trial court denied Appellant's motion to remove the juror. *Id*.

> The trial court explained its reasoning as follows:

> > This court denied defense counsel's request as we determined that Juror Number 3 did not view himself as a victim of a violent crime. Since he did not believe he was a victim, he could not have falsely answered the *voir dire* question. Additionally, no other juror engaged Juror Number 3, he did not discuss the facts of this case with any other juror, and Juror Number 7 indicated that it did not affect his ability to decide the case. Therefore, this court did not err by denying Appellant's motion to remove Juror Number 3.

Trial Court Opinion, 12/5/19, at 9 (unnecessary capitalization omitted).

Appellant maintains that Juror Number Three was guilty of two instances of misconduct that warranted his dismissal. Appellant first contests the trial court's finding that the juror did not give a false answer to the *voir dire* question about being a crime victim. He presents the following argument:

> It would be a stretch beyond the imagination to conclude that a person being shot at is not a victim, especially when the case *sub judice* involved someone being shot at and criminal charges resulting therefrom. A person being shot at is gun violence. It

does not matter whether the person believed they were a victim or not. Juror Number Three made the decision to not answer this question after hearing the facts of the case presented by the [Commonwealth]. If Juror Number Three wasn't sure if his experience was what the [Commonwealth] was asking, he could have asked for a sidebar with the [c]ourt in order to clarify the question. His willful failure to answer the question correctly indicated his bias to the [Commonwealth].

Appellant's brief at 13.

We disagree. First, nothing in the record suggests that criminal charges were brought against the individual who allegedly shot at Juror Number Three, let alone that any conviction resulted. For all we know, the story about this alleged incident could be a complete fiction. Even if the story is accurate from the juror's perspective, it does not take much imagination to envision how the story might not depict a crime of which the juror was a victim, *e.g.*, an accidental or justified shooting. Upon this record, it would be pure speculation to conclude that the juror was indeed a crime victim, and thus gave a false response to a *voir dire* inquiry.

Second, assuming that Appellant's interpretation of the juror's story is accurate, the trial court, based upon its opportunity to see and hear the juror explain his answer, found that he simply was not the type of person to see himself as a victim in the story he relayed. **See** N.T. Trial, 6/11-12/19, at 181. Rather, the juror just presented a matter-of-fact account of a time that he and a friend had been in the woods in Maryland, they were shot at by a person on a roof, and Juror Number Three was able to discern where the shots came from and identify the person. **Id**. at 175, 178. As the trial court's

findings of fact are supported by the record, they are binding upon us. **See Cosby**, **supra** at 426. Therefore, because the juror truly did not identify as a victim, and no definition of "victim" was offered to disabuse him of that notion, his failure to indicate that he was one was not "willful."

Furthermore, since the juror claimed that his experience would not affect his ability to be impartial in this case, and Appellant offers nothing to suggest that the juror was biased, we have no reason to conclude that Appellant suffered any prejudice as a result of Juror Number Three's failure to identify himself as a crime victim during *voir dire* and the trial court's refusal to strike him from the jury. **See Flor**, **supra** at 639.

Appellant next characterizes Juror Number Three's decision to share his story as an attempt to engage in premature deliberation of the case with his fellow jurors. **See** Appellant's brief at 14. Again, there is no evidence in the record to support Appellant's contention as to Juror Number Three's intent in telling his story. Moreover, it is clear that no premature deliberations did ensue as a result of the juror's sharing, so Appellant suffered no prejudice. **See** N.T. Trial, 6/11-12/19, at 178-80 (Juror Number Seven indicating that Juror Number Three did not talk about the case and no jurors engaged him after he told his story). As stated above, juror misconduct does not warrant relief in the absence of prejudice. **See Flor**, **supra** at 639.

Accordingly, because Appellant has failed to demonstrate that he suffered prejudice as a result of juror misconduct, there is no basis for us to grant relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/16/2020